AGUSTÍN RÍOS, Plaintiff and Appellant, *v.* JULIÁN MERCADO, Defendant and Appellee.

No. 10639. Argued September 1, 1952.—Decided September 30, 1952.

*Carlos J. Ortiz* for appellant. *R. A. Arroyo Ríos* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

A complaint in an action of Denial of Servitude of Light and View was filed in the Humacao Section of the former District Court of Puerto Rico. After the answer was filed and the case heard on its merits, the lower court entered judgment dismissing the complaint and set forth the following findings of fact:

"That the plaintiff and the defendant own two houses located on San Juan Street in Fajardo, and that defendant's house adjoins plaintiff's on the East which was built on the dividing line without leaving any space between the lot on which it stands and plaintiff's house.

"That defendant's house has several windows that open directly upon plaintiff's house and which have direct views upon plaintiff's property and both houses, plaintiff's and defendant's, stand on a lot belonging to the Municipality of Fajardo, Puerto Rico.

"That Agustín Ríos, the plaintiff, purchased the described house from Carmen Medina and her husband, Octavio Moreira, on August 22, 1939, according to a deed executed before Notary Jaime Llavina Aponte; Carmen Medina and her husband having purchased it from Dr. and Mrs. Juan Veve Carrillo, according

to a deed of October 14, 1937; Juan Veve Carrillo, according to a deed executed on October 6, 1937, having been given the said house by Evaristo Pérez and his wife in payment of a debt, and Pérez having acquired it in 1924 by the purchase of rights and shares from the Sucn. Maldonado.

"That the defendant acquired the house described in the third averment of the complaint in 1912 and repaired it in 1918, at which time the openings were made and the windows fixed, the Sucesión Maldonado being then the owner of plaintiff's house.

"That Evaristo Pérez, married to Flor de María Maldonado, and the former owner of plaintiff's house, requested the defendant four or five times to close the windows, the last time in June or July 1924, and the defendant refused, and that defendant's house has always been, even before he acquired plaintiff's house, in the same condition it is now, over twenty-five years having elapsed since Evaristo Pérez required the defendant to close said openings or windows."

In its conclusions of law the court *a quo* stated:

"That the defendant built on the border line between the lot upon which his house stands and plaintiff's house and opened windows and balconies with direct views without leaving a distance of two meters between the wall in question and plaintiff's property. Section 518 of the Civil Code, 1930 ed.

"That servitudes of light and view, which are continuous and apparent, may be acquired by prescription after twenty years or more. Section 473 of the Civil Code, 1930 ed. *Roman Catholic Church* v. *Combate Tobacco Corp.*, 42 P.R.R. 363; *Balzac* v. *Torres*, 68 P.R.R. 908.

"That defendant's property acquired the servitude of light and view ever since 1924, either in June or July, when the then owner of plaintiff's property asked the defendant to close the openings and windows. Section 474 of the Civil Code of Puerto Rico."

The plaintiff appealed from that judgment to this Court and assigned the errors listed below, without the appellee's having filed any brief:

"*First error:* The lower court erred in deciding that the defendant had acquired the servitude of light and view by prescription.

"*Second error:* The lower court committed manifest error in declaring that the lot on which plaintiff's house stands belonged to the Municipality of Fajardo and that, therefore, there was a nonjoinder or misjoinder of parties."

■ In deciding the case the aforesaid Court of Humacao dismissed the complaint on the ground that the defendant had established with his evidence that his property enjoyed a servitude of light and view acquired by prescription after twenty years.

The court *a quo* decided that the lot on which plaintiff's house is located belongs to the Municipality of ·Fajardo. Plaintiff-appellant challenges that finding. During the hearing and in that connection, the lower court admitted in evidence deed No. 55 executed in Fajardo on October 27, 1950, before Notary Gerardo Méndez, Jr., in which the Municipality of Fajardo states that it sells to the plaintiff the lot upon which it is claimed that the plaintiff's house is constructed. However, the description of that lot, as the same appears in the aforesaid deed, differs from that contained in the complaint that had been filed. The evidence discloses that the Registrar of Property of Humacao informed the plaintiff that he could not record the deed because the description of the lot did not coincide with the description of the same property in the Registry. Subsequently, the defendant presented in evidence a certificate of the Registrar of Property of Humacao, which was admitted, as to plaintiff's house and the lot upon which it stands, and it appears from that certificate that the lot belongs to the Municipality of Fajardo. The plaintiff tried thereafter to offer in evidence an "Explanatory Deed" intended to clarify the description of that lot, but he later desisted.

From the certificate of the Registrar of Property of Humacao it is evident that the lot in question belongs to

the Municipality of Fajardo, and deed No. 55 of October 27, 1950, in virtue of which the Municipality of Fajardo sells a lot to the plaintiff, although admitted by the court *a quo*, is, nevertheless, insufficient to alter the conclusion that the lot upon which plaintiff's house stands belongs to the Municipality of Fajardo, since, as we have pointed out, the description of the lot contained in said deed is different from the description of the lot upon which plaintiff's property was built, according to the Registry of Property of Humacao, and is different from the description set forth in the complaint which coincides with the description appearing in the Registry of Property.

The appellant challenges the finding of the lower court that said lot belonged to the Municipality of Fajardo, alleging that some of the witnesses who testified in this case stated that the boundaries of the lot are identical with those set forth in deed No. 55, and he claims that the evidence shows that the plaintiff had a single property along the entire street of Fajardo where both houses are located. That evidence is not sufficient to prove that the finding of the court *a quo* was erroneous.

At any rate, plaintiff himself alleged in his complaint, and orally admitted at the hearing, that the lot on which defendant's house stands belongs to the Municipality of Fajardo. Under those circumstances and it having been proved in this case that the Municipality of Fajardo is the owner of the two lots on which the houses of both parties stand, said Municipality was and is an indispensable party plaintiff hereto. Since the instant case involves the probable judicial establishment of a servitude, or the probable pronouncement that there is no servitude whatsoever, the owner of the lot on the dominant tenement or of the lot on the servient tenement is an indispensable party to this suit inasmuch as, although the servitude affects directly the houses located on the lots, however, that servitude, or its absence,

also affects the lots in question. Precisely, this Court has decided in *Díaz* v. *Guerra*, 18 P.R.R. 790 and *Díaz* v. *Rivera et al.*, 33 P.R.R. 523, that the owner of a house built on a lot of a municipality, which is not made a party to the suit, has no right to bring an action in denial of a servitude of light and view, in view of the fact that an action of denial of servitude can be brought only by the owner of the estate the freedom of which is sought or by the person possessing such estate as owner. An indispensable party is one whose presence is required in order that the court may make a final adjudication as to all persons involved, and is one who has such an interest in the controversy that judgment can not be rendered without affecting that interest or without leaving the controversy in such a situation that its determination, without the presence of that party, is inconsistent with equity and good conscience. *People* v. *Henneman*, 61 P.R.R. 184; 2 Moore's Federal Practice 2144, 2150; 29 Cal. L. Rev. 731, 737.[1]

In accordance with § 532 of our Civil Code, when a person has the direct dominion of any property and another has the beneficial dominion, no perpetual voluntary servitude can be established thereon without the consent of both owners. In view of the provision of that Section and the cases of *Díaz* v. *Guerra* and *Díaz* v. *Rivera et al.*, *supra*, the Municipality of Fajardo must be joined as a party plaintiff or as a defendant if it refuses to be joined as party plaintiff.

 The fact that an indispensable party, such as the Municipality of Fajardo here, was omitted, ought by itself to prevent this Court from considering further the merits of the case and we would be justified in remanding the case to the lower court in order that the Municipality of Fajardo be joined as a party. Nevertheless, in furtherance

---

[1] The Supreme Court of the United States has already decided in *Peper* v. *Fordyce*, 119 U. S. 469, that one who holds the bare legal title to a trust is an indispensable party.

of justice and in order to furnish adequate orientation to the parties and to the lower court as to any subsequent proceedings in connection with this case, we must indicate that the ground on which the court *a quo* dismissed the complaint is erroneous. The Court of Humacao decided that the defendant enjoys a servitude of light and view because it acquired it by prescription, inasmuch as ever since 1924 the then owner of plaintiff's parcel asked the defendant to close the openings and windows of his house, over twenty years having elapsed since that date.

Under § 473 of our Civil Code, a continuous and apparent servitude is acquired by virtue of a title[2] or by prescription after twenty years. Servitudes of light and view are continuous and apparent and may be acquired by prescription after twenty years. *Balzac* v. *Torres*, 68 P.R.R. 908; *Ramos* v. *Viejo*, 66 P.R.R. 607; *Roman Catholic Church* v. *Combate Tobacco Corp.*, 42 P.R.R. 363; *Díaz* v. *Guerra, supra;* 4 Manresa, *Comentarios al Código Civil Español*, 6th ed., p. 672.

Section 474 of our Civil Code provides:

"In order to acquire by prescription the servitudes referred to in the preceding Section, the time of possession shall be counted, in positive servitudes, from the day on which the owner of the dominant tenement or the person who has made use of the servitude shall have begun to exert it over the servient tenement; and in negative servitudes, from the day on which the owner of the dominant tenement shall have, by a formal act, prohibited the owner of the servient tenement to execute the act which would be legal without the servitude."

Since in this case the servitude of light and view in one's own wall is negative, the required twenty-year period of possession is counted from the day on which the owner of the dominant tenement shall have, by a formal act, prohib-

---

[2] The defendant alleges in his answer that he had acquired his servitude of light and view by prescription and by title, but he offered no evidence regarding his alleged acquisition by title.

ited the owner of the servient tenement to execute the act which would be legal without the servitude, on which day the obstructive act of the owner of the dominant tenement must be made known. *Balzac* v. *Torres, supra; Ramos* v. *Viejo, supra; Díaz* v. *Pérez,* 56 P.R.R. 696; *Polanco* v. *Ruiz,* 55 P.R.R. 758; *Roman Catholic Church* v. *Combate Tobacco Corp., supra;* 110 *Jur. Civil* 56; *Cortés* v. *Yu-Tibo,* 2 Phil. 25; *Fabie* v. *Lichauco et al.,* 11 Phil. 14.

In Manresa, *op. cit.* p. 672, the following appears:

"In speaking of negative servitudes, all of them being non-apparent, Section 538 undoubtedly intended to refer to those which are connected in such a way to other positive servitudes that the latter can not be conceived without the former. There is no actual servitude while there is a right to prevent its use and, thus, in the servitude of light, for example, the twenty-year period is not counted from the date on which the openings to receive the light are made, but rather from the date on which the owner of the building in which the openings are made prohibits the adjoining owner to build or to prevent the light somehow. (See the judgments of May 10, 1884, January 10, May 31, 1890, February 8, 1899 and January 8, 1908.)

"It must be understood thus, although Section 538 refers in general to negative servitudes, because the provision of this Section is subordinate to the provision of Section 537, of which it is a mere accessory, and to the provision of 539, and it having been stated that nonapparent servitudes, either continuous or not, can not be acquired by prescription, it goes without saying that negative servitudes, all of which are nonapparent, can not be constituted thus. The provision of Section 538 as to these servitudes merely has, therefore, the scope stated."

In 2 Valverde, *Tratado de Derecho Civil Español,* 3d ed., p. 370, we find the following:

". . . In other words, that in negative servitudes the time shall be counted from the moment there is an obstructive act, as required by our legislation of *Partidas;* an obstructive act or opposition that requires these three circumstances determined by scientific doctrine:

"1st. That the owner of the servient tenement shall have proceeded to construct on his tenement works that the owner of the dominant tenement seeks to prevent.

"2d. That the owner of the dominant tenement shall have objected to the accomplishment of the works.

"3d. That as a result of this opposition, the owner of the servient tenement shall have desisted from the works undertaken or which he proposed to undertake."

See also p. 414 of that same volume; 2 Castán, *Derecho Civil Español Común y Foral*, 6th ed., p. 288.

The lower court erroneously decided that the limitation period began to run from the moment the owner of the house located on the servient tenement asked the defendant to close the openings and windows. On the contrary, the legal rule is to the effect that the obstructive act that starts the limitation period in the case of negative servitudes is the act of the owner of the dominant tenement formally manifesting his objection against any work or building being done by the owner of the servient tenement, on his premises, which might prevent the enjoyment of the servitude of light and view. There has been no proof here that the plaintiff or former owners of plaintiff's house have begun to do on the tenement where his house stands works or buildings preventing the enjoyment of the servitude, nor that the defendant has objected to such works, nor that, as a result of that opposition, the plaintiff, or any of his predecessors, has desisted from such work or building. Therefore, the evidence offered does not show that the requirement contained in § 474 of the Civil Code was complied with, and there is no ground to conclude that the defendant has acquired a servitude of light and view by prescription.

The judgment appealed from will be reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Todd, Jr., did not participate herein.